**J.S., a minor, by and through his parents and natural guardians H.S. and I.S., Appellants,**

v.

**BETHLEHEM AREA SCHOOL DISTRICT, Thomas Doluisio and A. Thomas Kartsotis.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.
Decided Feb. 15, 2002.
Reargument Denied April 11, 2002.

---

Robert E. Sletvold, Easton, for appellants.

Ellis H. Katz, New Britain, for appellee.

Before SMITH–RIBNER, Judge, FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

J.S. (Student), a minor, by and through his parents and natural guardians H.S. and I.S. (collectively, Appellants), appeal from the February 25, 2000 order of the Court of Common Pleas of Northampton County (trial court) that granted summary judgment in favor of the Bethlehem Area School District, Thomas Doluisio and A. Thomas Kartsotis (collectively, School District).[1] We affirm.

In May of 1998, Student was in the eighth grade at Nitschmann Middle School. Sometime prior to May, Student created a website on his own computer while at home. The website, titled "Teacher Sux," contained several web pages that made derogatory comments about Student's algebra teacher, Mrs. Fulmer, and Mr. Kartsotis.

As a result of the website, the School District began disciplinary proceedings against Student that consisted of two days of hearings held on August 19 and 26, 1998 before the Bethlehem Area School Board (School Board).[2] Based upon the evidence presented, the School Board concluded that Student violated the Student Code of Conduct by 1) making threats to a teacher, 2) harassing a teacher and 3), showing disrespect to a teacher. Consequently, the School Board voted to permanently expel Student.

Appellants appealed Student's expulsion to the trial court, alleging that the School District violated Student's First, Fifth, Sixth and Fourteenth Amendment rights. The trial court affirmed Student's expulsion and, on appeal, we affirmed. *See J.S. v. Bethlehem Area Sch. Dist.,* 757 A.2d 412 (Pa.Cmwlth.2000), *appeal granted,* 565 Pa. 655, 771 A.2d 1290 (2001).

In addition to challenging Student's expulsion, Appellants filed a civil rights action against the School District. Appellants alleged that the School District (1) deprived Student of his civil rights under 42 U.S.C. § 1983[3] when it allegedly violated Student's First, Fifth, Sixth and Fourteenth Amendment rights, (2) conspired to violate Student's civil rights in violation of 42 U.S.C. § 1985(3),[4] (3) deprived Student of his civil rights under the Pennsylvania Constitution and (4), abused the legal process. The trial court granted, in part, the School District's preliminary objections; it dismissed Appellants' § 1983 claims based on alleged violations of Student's Fifth and Sixth Amendment rights. All other causes of action remained.

1. Mr. Doluisio was the Superintendent of the School District. Mr. Kartsotis was the principal of Nitschmann Middle School, where the underlying events occurred. Mr. Kartsotis is not participating in this appeal.

2. Appellants had enrolled Student in an out-of-state school prior to August 26, 1998. Because school was in session, Student did not attend the second hearing.

3. Section 1983 provides that
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
42 U.S.C. § 1983.

4. Section 1985(3) provides that
[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3).

Thereafter, on December 29, 1999, the School District filed a motion for summary judgment.[5] In granting the motion, the trial court found that Appellants' claims were barred by res judicata. Appellants now seek review before this Court.[6]

Res judicata encompasses two related, yet distinct principles: technical res judicata and collateral estoppel. *Henion v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)*, 776 A.2d 362 (Pa.Cmwlth.2001). Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. *Id.* Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment. *Id.*

Technical res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. *Id.* Res judicata applies to claims that were actually litigated as well as those matters that should have been litigated. *Id.* Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings. *Id.*

Similarly, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82 (1998).

Interesting, Appellants contend only that they were denied an opportunity to fully and fairly litigate the issues before the School Board in that there was no discovery in the expulsion proceedings, the School Board was not an independent fact finder, Student was unable to testify on his own behalf and the School Board was not a court of competent jurisdiction.[7] They do

5. Summary judgment is proper where the pleadings, depositions, affidavits and other materials of record show that there is no genuine issue of material fact and the moving the party is entitled to judgment as a matter of law. *L.J.S. v. State Ethics Comm'n*, 744 A.2d 798 (Pa.Cmwlth.2000). On a motion for summary judgment, the record must be viewed in a light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Id.*

6. On review of an order granting summary judgment, we are limited to determining whether the trial court made an error of law or abused its discretion. *Downingtown Area Sch. Dist. v. Int'l Fid. Ins. Co.*, 671 A.2d 782 (Pa.Cmwlth.1996).

7. In support of their position, Appellants cite *Rue.* In that case, Rue was terminated after security personnel observed her eat a bag of potato chips without paying for it. Rue filed for unemployment compensation benefits and the referee found as fact that Rue did not steal company property. Unemployment benefits were awarded and K–Mart did not appeal.

Thereafter, Rue filed a defamation suit against K–Mart. The lower court granted Rue's motion in limine seeking to prevent K–Mart from introducing any evidence that she stole a bag of potato chips. After a verdict in Rue's favor, K–Mart appealed to the Superior Court, which reversed the lower court's ruling on Rue's motion in limine. Rue appealed to the Supreme Court.

On appeal, the Supreme Court noted that 1) unemployment compensation proceedings are designed to adjudicate matters quickly in order to get money into the hands of the unemployed and 2), the amount is often quite mini-

not contend that the elements of technical res judicata were not met or that any other element of collateral estoppel was lacking.[8]

Pursuant to Section 1318 of the Public School Code of 1949,[9] the School Board has the authority to permanently expel a student after hearing. Section 12.7(b)(2) of the Department of Education's regulations (Code) requires that prior to expulsion from school, a student be afforded a formal hearing. 22 Pa.Code § 12.7(b)(2). *Inter alia*, a student is entitled to be presented with the names of witnesses against him, to request that any witness against him be present and subject to cross-examination and to testify and present witnesses on his own behalf. *See* 22 Pa.Code § 12.8(b)(2)(v), (vi) and (vii).

Student was represented by counsel during the hearings, which took place on August 19 and 26, 1998. Both Mr. Kartsotis and Mrs. Fulmer testified at the hearings and Appellants were given an opportunity to cross-examine them. Thus, Student was afforded the discovery due to him under the Code's regulations.

Furthermore, Student was available at the first hearing on August 19th to testify on his own behalf. When it became evident that the hearing would not conclude that evening, the School Board set the second hearing for August 26th to accommodate Student's father's schedule.[10] As the trial court stated in its order affirming Student's expulsion, Student's parents and his counsel attended the second hearing, counsel cross-examined all witnesses and had the opportunity to call witnesses on Student's behalf. Despite the importance of the proceedings, Student was unable to attend the second hearing because his parents had enrolled him in an out-of-state school; the School District did not prevent Student from attending the hearing or testifying on his own behalf.

■ Appellants further complain that the School Board was not a court of competent jurisdiction and that it was not an independent fact finder. The law, however, provides that where an agency is acting in a judicial capacity and resolves disputed issues of fact that the parties had an opportunity to fully litigate, the courts will not hesitate to apply preclusion principles. *Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047 (1992), *aff'd sub nom.*, *Gasperin v. GAF Corp.*, 536 Pa. 429, 639 A.2d 1170 (1994).

■ The School Board notified Student of the charges against him, afforded him

mal and therefore provides little incentive for the employer to litigate the matter vigorously. Accordingly, the Supreme Court upheld the Superior Court's conclusion that K–Mart did not have a full and fair opportunity to litigate the issue of whether Rue stole company property. The Court specifically limited its holding of the application of collateral estoppel to unemployment compensation cases. *Rue*, 552 Pa. at 21 n. 4, 713 A.2d at 87 n. 4. It further stated that its determination had no bearing on the body of case law concerning the preclusive effect of workers' compensation proceedings on subsequent litigation. *Id.* *See also Frederick v. Action Tire Co.*, 744 A.2d 762 (Pa.Super.1999), *appeal denied*, 564 Pa. 711, 764 A.2d 1070 (2000) the Superior Court, citing *Rue*, applied collateral estoppel principles to a civil action where the cause of the plaintiff's alleged disability was previously addressed in a workers' compensation claim).

8. Because the trial court concluded that Appellants' claims were barred by res judicata, it did not address whether collateral estoppel applied as well. (Trial court opinion at p. 18)

9. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1318.

10. Appellants' request to continue the hearing until Student's Thanksgiving break was not granted because the School Board had granted several of Appellants' earlier requests for continuances.

the opportunity to defend himself, followed the mandates of the Code's regulations for expulsion and issued findings of facts supporting its decision to expel Student. Thus, the School Board was acting in a quasi-judicial capacity when it undertook expulsion proceedings against Student. *See generally Appeal of Emmanuel Baptist Church,* 26 Pa.Cmwlth. 427, 364 A.2d 536 (1976) (citing with approval *Canney v. Bd. of Pub. Instruction of Alachua County,* 278 So.2d 260 (Fla.1973) where the Florida Supreme Court stated that the term "quasi-judicial" means only that a school board is acting under certain constitutional strictures that have been enforced upon all administrative boards). We therefore agree that Appellants were granted a full and fair opportunity to litigate the alleged violations of Student's constitutional rights in the prior proceeding.

Notwithstanding, Appellants argue that an administrative agency's determination should only preclude subsequent litigation before another administrative agency. This Court, however, in *Christopher v. Council of Plymouth Tp.,* 160 Pa.Cmwlth. 670, 635 A.2d 749 (1993), affirmed a court of common pleas' determination that collateral estoppel principles applied between an action before an administrative agency and a subsequent action before that court.

In *Christopher,* the plaintiff, a police officer, suffered a concussion while subduing a psychiatric patient. He returned to work for six days, but continued to experience blurred vision. Christopher began receiving workers' compensation benefits. Medical personnel advised him to sleep in a sitting position and to avoid head trauma and stressful situations. No other restrictions were placed on him.

Thereafter, Christopher was requested to return to work as a desk sergeant with no loss of pay. He refused to report to work, and the employer filed a petition to terminate benefits. Within a month of the employer's offer, Christopher opened his own restaurant.

A year later, Christopher was ordered to return to work as a desk sergeant but once again refused. He was thereafter discharged. Christopher filed a timely answer to the dismissal. The employer's personnel review board (review board) sustained Christopher's dismissal, concluding that he was medically and physically capable of performing the work duties assigned to him. Christopher appealed to the court of common pleas, which affirmed the review board. No appeal was taken from that order.

In 1987, the workers' compensation judge (WCJ) terminated Christopher's benefits. The WCJ found the employer's medical witness to be credible where he testified that Christopher had fully recovered from his work injury.

Prior to the review board decision, Christopher commenced an action in the court of common pleas pursuant to a collective bargaining agreement (CBA), alleging that as a result of his work injury he became permanently disabled from performing his duties as a police officer. The employer filed for summary judgment, which was granted by the court of common pleas.

On appeal, we concluded that the court of common pleas did not err in applying collateral estoppel principles. In the workers' compensation matter, the ultimate issue was whether Christopher was fully recovered from his work injuries. That was the exact issue to be addressed by the court of common pleas in the action brought under the CBA. We further noted that the review board's decision similarly precluded Christopher from recovering in an action under the CBA because it had

already been determined that he was fit for employment. Accordingly, we affirmed that portion of the court of common pleas' order.

■■■■ *Christopher* serves to illustrate that the courts have applied res judicata and collateral estoppel principles to cases where the administrative agency was acting in a judicial capacity and a subsequent action was commenced in a court of law.[11] *See also Frederick.* Because Appellants' underlying causes of action are precluded, their § 1983 claims are no longer viable. A § 1983 claim is not a cause of action separate from the underlying federal right, but rather, a vehicle for asserting one's rights. *Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309 (1995).

Accordingly, we affirm.

### ORDER

AND NOW, this 15th day of February, 2002, it is hereby ordered that the February 25, 2000 order of the Court of Common Pleas of Northampton County is AFFIRMED.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. The majority holds that a court of record must give preclusive effect to the ultimate resolution of issues arising from a formal expulsion hearing before a local school board. The question appears to be a matter of first impression in Pennsylvania. The majority cites no decision, and I have found none, where a court has applied the principles of res judicata or collateral estoppel to a local school board expulsion proceeding. For the reasons that follow, I would not establish such a precedent.

As a preliminary matter, it is necessary to address whether this court should even consider the res judicata and collateral estoppel issues. The Court of Common Pleas of Northampton County (trial court) held that the civil rights claims of J.S. (Student) against the Bethlehem Area School District, Thomas Doluisio and A. Thomas Kartsotis (collectively, School District) are barred by technical res judicata. In so holding, the trial court specifically stated that it would not consider the School District's alternative argument that Student's civil rights claims are barred by collateral estoppel. (Trial court op. at 18.)

The majority asserts that, in his brief, Student does not challenge the trial court's conclusion that Student's claims are barred by res judicata;[1] according to the majority, Student argues only that collateral estoppel does not apply. (Majority op. at 939–940.) I respectfully submit that, if Student did not challenge the trial court's holding, then (1) Student has waived any challenge to the trial court's holding, (2)

---

11. Appellants further complain that the trial court erred in granting summary judgment because the School District's motion was filed almost three months prior to the March 1, 2000 discovery deadline. Pa. R.C.P. No. 1035.2(1) provides that summary judgment may be granted where there is no genuine issue of any material fact as to a necessary element of the cause of action that could be established by additional discovery or expert report. Pa. R.C.P. No. 1035.2(2) requires that discovery be complete only as it relates to the motion. *See also* Pa. R.C.P. No. 1035.1, Explanatory Comment. Appellants do not contend that discovery was not complete as to

the motion for summary judgment. Furthermore, "[t]he binding effect of a former adjudication does not depend upon the evidence or arguments presented. Inadvertent omission of available evidence is never an acceptable ground for a new action or new trial." *Scott v. Mershon,* 441 Pa.Super. 551, 657 A.2d 1304, 1307 (1995) (quoting *Fleming v. Strayer,* 367 Pa. 284, 288, 80 A.2d 786, 788 (1951)).

1. The majority indicates in a footnote that the trial court based its holding solely on the doctrine of res judicata. (Majority op. at 940 n. 8.)

Student's claims are barred by res judicata and (3) any discussion of the collateral estoppel issue is irrelevant and unnecessary.[2]

However, I do not agree that Student failed to challenge the trial court's res judicata holding in his brief. In his Statement of the Questions Involved, Student specifically asks whether the trial court erred in granting summary judgment *both* "on the grounds of *res judicata* and collateral estoppel." (Student's brief at 7.) In the Argument portion of his brief, Student presents the rule of law governing *both* res judicata and collateral estoppel. (Student's brief at 12–13.) Student also properly cites authority indicating that, under *both* res judicta and collateral estoppel, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the claim.[3] (Student's brief at 13.) Student then specifically argues that he did not have a full and fair opportunity to litigate his claims before the local school board. (Student's brief at 13–14.) Thus, Student presented a challenge to the trial court's res judicata holding. Unlike

the majority, then, I believe it is quite appropriate to address whether the trial court erred in granting summary judgment based solely on res judicata.[4]

## I. Res Judicata

Res judicata, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim that was the subject of the first action. *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309 (1995). In order to prevail based on res judicata, there must be a concurrence of four conditions: (1) an identity of the thing sued for;[5] (2) an identity of causes of action; (3) an identity of persons and parties to the action; and (4) an identity of the quality or capacity of the parties suing or being sued. *Gow v. Department of Education*, 763 A.2d 528 (Pa.Cmwlth.2000), *appeal denied*, 566 Pa. 651, 781 A.2d 149 (2001).

If all four conditions have not been met, the inquiry ends.[6] However, even when all four conditions are met in a case, it is still necessary to address whether the party

2. After making its observation, the majority inexplicably proceeds to address Student's collateral estoppel argument.

3. Student cited the case of *Ham v. Sulek*, 422 Pa.Super. 615, 620 A.2d 5, 8 (1993), for the proposition that res judicata applies only where a party has been "afforded an opportunity to litigate a claim." (Student's brief at 13.) There is no question that this is a correct statement of the law. *See* Restatement (Second) of Judgments § 83 (1982).

4. I note that "the term 'res judicata' is a somewhat sloppy term and that it is sometimes used to cover both *res judicata* itself (claim preclusion) as well as collateral estoppel ('broad' *res judicata* or issue preclusion)." *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993). The fact that there is some confusion in the law as to the use of the term res judicata is more rea-

son not to ignore Student's challenge to the trial court's res judicata holding.

5. In the local school board proceeding, the school board "sued for" Student's expulsion; in the trial court proceeding, Student sued for compensatory and punitive damages. Thus, there was *not* an identity of "things sued for" in the two proceedings. *Cf. Christopher v. Council of Plymouth Township*, 160 Pa. Cmwlth. 670, 635 A.2d 749, 752 (1993) (stating that a "worker's [sic] compensation claim and a common law cause of action are not identical and consequently *res judicata* is not applicable").

6. Although I would conclude that at least one of the four conditions has not been met here, I will continue my inquiry to address the issue raised by Student, i.e., whether Student had a full and fair opportunity to litigate his First Amendment claim before the local school board.

against whom res judicata is asserted had a full and fair opportunity to litigate the matter brought before the administrative tribunal. The Restatement (Second) of Judgments § 83 (1982) provides as follows:

> (2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:
>
> . . . .
>
> (b) The right on behalf of a party to . . . [a] fair opportunity to rebut evidence and argument by opposing parties. . . . (e) Such . . . procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for [1] the magnitude and complexity of the matter in question, [2] the urgency with which the matter must be resolved, and [3] the opportunity of the parties to obtain evidence and formulate legal contentions.

First, as to the magnitude and complexity of the matter in question here, this is a case of the highest magnitude involving Student's First Amendment right to free speech. Moreover, it is a complex matter because the case involves the effect on an entire school community of an alleged threat made against one teacher on a student's web site.[7] Second, with respect to urgency, the regulation governing a local school board's formal expulsion proceeding specifically states that the "proceeding must be held with all reasonable speed." 22 Pa.Code § 12.8(b)(1)(ix). Third, because pre-hearing discovery is not permitted, the parties have little, if any, opportunity to obtain evidence prior to the hearing. *See* 22 Pa.Code § 12.8. Moreover, absent pre-hearing discovery, a party does not have a fair opportunity to rebut the evidence and argument of the opposing party. Considering these factors, I conclude that the final determination by the School Board in this case is not conclusive under the rules of res judicata.

## II. Collateral Estoppel

Although res judicata does not apply here, both proceedings did involve the question of Student's First Amendment rights. Therefore, it is appropriate for us to consider whether the doctrine of collateral estoppel, or issue preclusion, bars Student's claims in this case.

The doctrine of collateral estoppel applies where the following four prongs are met: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.[8] *Rue v. K–Mart Corpora-*

---

**7.** I have found *no* cases prior to this one in any jurisdiction where the court addressed whether an alleged threat made against a teacher on a student's web site is protected by the First Amendment. Nor can I envision a court's contemplation of such a weighty issue without a full opportunity for the litigants to establish necessary *facts*.

**8.** I note that the Restatement (Second) of Judgments § 28 (1982) provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .
>
> (3) A new determination of the issue is warranted by differences in the quality or ex-

*tion,* 552 Pa. 13, 713 A.2d 82 (1998). Student argues that the fourth prong was not met in this case, and I agree.

In *Rue,* our supreme court held that the determination of an issue in an unemployment compensation proceeding should *not* be accorded preclusive effect. The court reasoned that, although proceedings before unemployment compensation referees satisfy the minimum requirements of due process,[9] the proceedings do not allow the parties to litigate the issues in the manner available in a court of record. *Id.* The court found especially significant the fact that unemployment compensation proceedings (1) are designed to adjudicate matters quickly, (2) do not allow for pre-hearing discovery and (3) do not follow the rules of evidence. *Id.*

The same can be said of a local school board's formal expulsion proceeding. Such proceedings must be held with all reasonable speed, do not allow for a period for pre-hearing discovery and do not follow the technical rules of evidence. *See* section 554 of the Local Agency Law, 2 Pa. C.S. § 554; 22 Pa.Code § 12.8(b)(1)(ix). If collateral estoppel does not apply to unemployment compensation proceedings, *Rue,* for the same reasons, collateral estoppel should not apply to a local school board's formal expulsion proceedings.[10]

In this particular case, Student certainly did not have a full and fair opportunity to litigate his claims. By letter dated August 5, 1998, the School Board gave Student notice of the three charges against him and informed him that the School Board had scheduled a hearing for August 19,

tensiveness of the procedures followed in the two [proceedings] ... or...

(5) [The] party sought to be precluded ... did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

9. Thus, the court made clear that the standard used to determine whether collateral estoppel applies is different from the standard for determining whether a litigant has been afforded his or her due process rights.

10. In reaching a contrary result, the majority relies upon *Christopher* and *Frederick v. Action Tire Company,* 744 A.2d 762 (Pa.Super.1999), *appeal denied,* 564 Pa. 711, 764 A.2d 1070 (2000). However, neither of these cases applies here.

To begin, *Christopher* and *Frederick* involved workers' compensation cases, not local school board expulsion proceedings. Although both are administrative proceedings, the procedures that govern workers' compensation cases are different from those that govern local school board expulsions. This is especially true with respect to pre-hearing discovery. In workers' compensation cases, the parties have ample opportunity for pre-hearing discovery; however, a student has *no* opportunity for pre-hearing discovery in an

expulsion proceeding. This is critical where, as here, the party against whom collateral estoppel is asserted argues that there was not a full and fair opportunity to litigate the claim before the administrative agency.

Moreover, the issue raised in *Christopher* involved the first prong of collateral estoppel, *not* the fourth prong. The question was whether the issues presented before the trial court were *identical* to the issues presented before the administrative tribunals. Thus, the court in *Christopher* never addressed whether the litigant in a workers' compensation proceeding has a full and fair opportunity to litigate a claim.

Our superior court did address the fourth prong in *Frederick,* holding that the litigant in a workers' compensation proceeding has a full and fair opportunity to litigate his or her claim. The court distinguished *Rue,* stating that the procedures in workers' compensation proceedings are different from those in unemployment compensation proceedings. *See Frederick.* As I indicate above, the procedures in local school board expulsion proceedings are different from those in workers' compensation proceedings, but they are similar to those in unemployment compensation proceedings. Thus, unlike the majority, I would conclude that *Rue,* rather than *Christopher* or *Frederick,* governs the outcome of this case.

1998. (O.R., Item No. 6, Exh. A at 1.) Thus, Student had less than two weeks to prepare his defense to the charges. Moreover, under School Board procedures, Student was precluded from pre-hearing discovery and was prohibited from deposing for rebuttal purposes the eight witnesses who testified on behalf of the School District.

Before the trial court, the parties conducted extensive discovery prior to the grant of summary judgment. (*See* O.R., Item Nos. 53, 57, 59, 61, 63.) During the discovery period, Student attempted to obtain a copy of the investigation file of the Federal Bureau of Investigation (FBI), which had declined to prosecute Student for any crime. (O.R., Item No. 53.) The FBI indicated to Student that it would not release the file without a court order from a court of record. (O.R., Item No. 59.) Thus, Student could not have acquired the FBI file for the proceeding before the School Board. Student also attempted to obtain the investigation file of the local authorities, which likewise had declined to prosecute Student for any crime. However, Student learned that the authorities would not release the file without a court order because Student was a juvenile. (O.R., Item No. 61.) Thus, Student could not have acquired the police investigation file for the proceeding before the School Board. Because Student needed court or-

ders to obtain discovery materials, Student did *not* have a full and fair opportunity to litigate his claims before the School Board.[11]

Accordingly, I conclude that neither res judicata nor collateral estoppel applies here, and, therefore, I would reverse and remand.

---

**11.** The majority concludes that Student was afforded "discovery" before the local school board because he had an opportunity to cross-examine two witnesses. (Majority op. at 940.) I submit that cross-examination is not equivalent to pre-hearing discovery.

The majority also concludes that Student had a full and fair opportunity to litigate the alleged violations of his constitutional rights because the school board was acting in a quasi-judicial capacity. (Majority op. at 940–941.) However, our supreme court held in *Rue* that unemployment compensation refer-

ees, acting in a quasi-judicial capacity, do *not* provide litigants with a full and fair opportunity to litigate claims. Thus, I believe that the majority's analysis of this issue is deficient. Indeed, the majority never addresses the fact that an administrative agency does not have authority to decide the constitutionality of its own action. *Ruszin v. Department of Labor and Industry, Bureau of Workers' Compensation*, 675 A.2d 366 (Pa.Cmwlth.1996). Therefore, the local school board in this case could *not* fully litigate Student's constitutional challenge to the school board's action.